Ms. Dury Thank you, Your Honors. Good morning and may it please the Court. This case presents the distinction between sanctions awarded against a client under Section 285 and sanctions awarded against attorneys under Section 1927. Those two sanctioning regimes have different standards because they reflect the different roles of clients and lawyers in our system. In the blue brief at 52, AlphaCap argues, quote, it was successful in defeating Gust's argument about improper venue and lost only on convenience factors. In the red brief at 51, Gust contends that the District Court declined to reach that issue and cites to a page I don't find in the venue. Gust did not pursue its argument for improper venue. It only proceeded in its reply brief to argue for the convenience factors. I don't believe it is disputed that venue was in fact proper as a matter of the governing law at the time and Gust has not contended otherwise in its briefing before this Court. And therefore, the only issue for the District Court in Texas was convenience. In the blue brief, you say, this is at 8, that Guthrie Saphir was, quote, ethically obligated to respect its client's settlement. I don't dispute that the decision to settle lies solely with a client, but did the firm consider an attorney's duties as an officer of the court or the duty to withdraw if the client insists on taking unreasonable or repugnant action? I agree, Your Honor, that the proper course, if the client insists on a course of action that is But here, there was nothing in the course of conduct that appropriately merited that act. The only thing that Gust has pointed to is maintaining the action that was filed in view of Gust's argument that it was frivolous under Section 101. First, to the extent that the complaint was frivolous, the rule for testing the frivolity of a complaint is Rule 11. That has procedural protections for the lawyers in terms of both the timing of that motion and the opportunity to withdraw the pleading. Sure, but we're not just looking at filing the complaint. We're talking about maintaining the suit not only in the Eastern District of Texas, but once it's been transferred to the New York Court after repeated suggestions by Gust that this is a frivolous suit under 101, right? So it is correct that what Gust is pointing to is So if you maintain a frivolous suit, isn't that properly compensable under 1927? No. Section 1927 relates to the multiplication of proceedings. Simply maintaining the complaint that was filed is not multiplying the proceedings by requiring them to respond to a frivolous opposition to a motion to transfer and by undergoing discovery and not dismissing what is clearly a frivolous complaint under 101. That multiplies the proceedings. I know you disagree that this wasn't a colorable complaint. We can get to that. But let's assume that it was not colorable. Why isn't the failure to dismiss it as soon as Gust brings it up enough to warrant 1927 sanctions? Because to the extent the issue is the frivolity of the complaint, Rule 11 is the vehicle for testing. It's not just the complaint. It's continued actions after the complaint. Because the Alice stuff makes this fuzzy. Let's assume, and this isn't going to work because this is a defense, not an actually cause of action, but it's what comes to mind. Let's say somebody, had a laches defense and properly filed it in their answer to the complaint. After the Supreme Court's decision in SCA, which said laches is no longer available. If the plaintiff sent a letter and said, you have to withdraw the laches defense or you're not going to rely on it. And they said, no, we want discovery. We want to continue our litigation of this laches defense. Wouldn't that be enough to get sanctioned under 1927? It would be continuing to litigate a completely non-colorable legal argument. So I would argue in that circumstance, the appropriate course of action would be to seek Rule 11 sanctions with respect to the filing of the pleading that included- Are 1927 and Rule 11 exclusive? I think that they are different and they apply in different circumstances. And Rule 11 crucially includes protections that are substantive as well as procedural. Because it allows for arguments for a good faith extension of the law. And I think 1927 can't be used to circumvent those procedural and substantive protections that are in Rule 11. As an attorney, the role of the lawyer is to advocate for the client's interests within the boundaries of the law. And Rule 11 is one of those boundaries. And within the rules of the game. Absolutely. And Your Honor asked about the venue motion and the opposition to the motion to in which the Texas court had denied transfer motions under similar factual circumstances. Where witnesses were dispersed. And here there was evidence that the former chief technology officer and other witnesses were in Vancouver. When the Texas forum was closer to the California plaintiff than the New York forum would have been. When the evidence that was proffered of the witnesses in New York was not detailed, but was general and superficial. And when there were witnesses in the district. I don't have to persuade this court that the opposition to transfer was meritorious. Or that it should have prevailed. The question is simply whether it was entirely without color. Given that this was a discretionary multi-factor test. One of the factors is the plaintiff's choice of forum. Given the evidence that had been proffered. The fact that the district got stipulated to. And the district court authorized discovery to test the evidentiary record. And that discovery turned up. Let's turn to some other practice. They cite Mr. Warris' declaration. Which is at 1339. In which he essentially says the defendants harassed me. They contacted my employer. And the employer threatened to insinuated that he would fire me if I continued in this kind of conduct. I've read this thing. What foundation is in there? How is the declaration possibly admissible under the federal rules of evidence? I think what matters with respect to the declaration is that it was Mr. Warris' decision to settle the other actions early because he perceived that he was suffering. Wait, wait, wait, wait. You're telling me he perceived this, right? What I'm saying is that what matters for these purposes is his state of mind. And the instructions that he gave. How do we know his state of mind? Because he testifies to it in his declaration. No, he doesn't. What's his foundation? It's his state of mind. Why? What I'm saying is the testimony is as to his state of mind and the reason. Are you listening to what I'm saying to you? I am, Your Honor. Okay. How is this cognizable evidence? I'm not saying his state of mind is irrelevant. I'm saying how does this show his state of mind? Because it is a declaration from him. He drafted it? His attorney did not? No. I don't know who put words to the computer or who typed it, but it is a declaration from him. And it's a declaration which contains no admissible statement. I would suggest, Your Honor, that a declaration from a witness is competent as to that witness's state of mind. Not unless it tells you the underlying foundational statements of evidence. But I would say here what matters is not whether his perception was correct. No, no. What you're saying is what doesn't matter is whether it was admissible evidence. Is that what you're telling me? No, Your Honor. What I'm saying is that a declaration from a witness as to the witness's state of mind is admissible as to that subjective state, even if the witness is wrong and even if the witness has no foundation for the predicate facts giving rise to that mental state. What matters here about the declaration is simply that it confirms that the decision to settle the other actions was made by Mr. Juarez, not by the lawyers. And likewise, that the authority here to settle the case and to grant a covenant not to sue was squarely within the client's domain and not the lawyer's domain. You're telling me that the arguments that were made by the law firm, yes, that the client was threatened, OK, relate solely to the client's state of mind and not to the statements that my employer insinuated that he would fire me, for example. That only goes to his state of mind. It doesn't matter if it actually happened. So I'm saying that the witness is a competent witness as to what the employer, what he understood the employer to have insinuated. And he is testifying to that. Really? He is testifying to that. Tell me who, what, when, where, why? Well, what the declaration says from Mr. Juarez is that what he took from what the employer said. He doesn't say what the employer said. No, it says that what he understood by what he took it to be an insinuation. And again... No, it doesn't. It says my employer insinuated. Right. And he's saying I was there. So you're saying any statement, if I say the ceiling is green, then that relates to my state of mind. No, Your Honor. No, Your Honor, I'm not. Because what the employer actually said and the truth of it is not being proffered to the court. I agree that would be hearsay.  And the only relevance of that is that Mr. Juarez says he was the one who made the decision. Well, okay, let me ask you this. So it's his perception of what might have transpired and it's his understanding of where he stood vis-a-vis his employer. Correct. And that is all that we are proffering it for. The point, the only point that I want to make with respect to Mr. Juarez's declaration is that he confirms that the settlement, the ultimate settlement authority was his. In the blue brief at nine, you allege that, quote, Gust Council acknowledged that this unreasonable demand, i.e. to request ownership of the patents in suit, reflected Gust's desire to, quote, do a touchdown dance. The Juarez declaration actually says it was Mr. Juarez who said the words it appeared that Gust wanted to do a touchdown. I think that is also reflected in Mr. Saphir's declaration, which was submitted at the same time as Mr. Juarez's declaration. But again, I think... Not based on knowledge. No, it was the conversation was with Mr. Saphir. That statement was made directly to Mr. Saphir. But I think, again, what matters for these purposes is that it is uncontested that the settlement demand... In your citation to the record at page 10, where you say, Gust Council admitted during this discussion that Gust's principle was unreasonable and that he was willing to make Gust Council the beneficiary of his reasonableness by racking up costs and fees. You cite to a pleading at 488. I apologize, Your Honor. You cite to a pleading? Correct. The evidence that was put before the court to that effect. A pleading? Yes. And again, but Your Honor, what I would say is that what matters here is that the demand for settlement from Gust was that AlphaCap hand over its patents. The lawyers cannot compel their client to do that. And sanctions against lawyers who are acting as agents on behalf of their client cannot, as a matter of law, be predicated on actions over which the lawyers do not have authority. Sanctions against the lawyers under 1927 are limited to multiplying the proceedings facetiously, conduct for which lawyers are responsible. I'll tell you something, counsel. When I practiced law, one of my partners came into me and said, thanks a lot, because I had told his client he was fired as a client of the firm. And I said, you'll thank me in the future. You better reserve the rest of your time. I will do so, Your Honor. Thank you. You may please the court. The district court properly grants attorney's fees under section 1927 in this case, based on appellant's course of conduct throughout the litigation. Can I ask you about the colorable nature of this claim? I mean, I think if this had been filed today, there'd be no doubt that this is a frivolous lawsuit under Alice. It was filed five months after Alice. There hadn't been any discussion of Alice, I think, by this court by then. I mean, since then, we've rejected dozens of claims just like this, most of them in Rule 36 affirmances. But how do we know when Alice is directed to one specific business method and do it on the computer, that that was necessarily going to encompass these kinds of mercury... Sorry, I have plastic braces in my mouth. Apparently, that word can't be said with them in. These kinds of claims. I agree. There were a handful of decisions before this case was filed. And as the case progressed and matured, more cases came out. And our argument, and the district court agreed, is that these claims are so bad that no attorney or client could have had a reasonable chance of success. Why was there no Rule 11 or early Rule 12 motion filed? The answer to that is not on the record, Your Honor. I can say that my client was preparing a Section 101 challenge during the litigation. Specifically, I believe it was in March of 2016. Well, it seemed to me, I mean, you make the argument that this was so frivolous that the fairly extraordinary award of attorney's fees against the attorneys under 1927 was appropriate. And fundamental to that is the whole idea that this whole case shouldn't have been filed in the first place. But yet no attempt to file a Rule 11 motion. There was no Rule 11 motion filed. There was a Rule 11 motion threatened by my client against appellants. But not even a Rule 12 motion either. No Rule 12 motion. I mean, even the Eastern District of Texas started granting Rule 12 motions on cases like this after Alice. That's correct. There was no Rule 12 motion. There was a 1404 and 1406 motion filed. And in terms of 1927, in terms of unreasonably or vexatiously multiplying proceedings, it seems to me that part of the reason why this litigation continued was that your client was not satisfied with the proposal to just walk away, had insisted not only for attorney's fees, which is understandable,  which sort of threw up an incredible roadblock to any reasonable settlement at that point. Well, Your Honor, I believe that a reasonable settlement would have been for them to walk away, which they could have done at any time, despite what we counter-offered. Well, they tried to do that, but that proposal was refused. That's not true. There was nothing preventing them from filing a covenant not to sue at any time during litigation, which would have killed all of their claims and all of our counter-claims. Well, covenant not to sue is different from just walking away. Perhaps, but at the end of the day, that's what they filed, which was a covenant not to sue. But they waited until they got to New York. They didn't do it while they were still in Texas. That's right. The patents, from your view, were valueless. That's correct. My client desired to have them to prevent them from being asserted against others in his field. Well, that's a significant demand, which it seems to me was as responsible for the continued nature of this litigation than anything else. So my client did that with the understanding that at that point in the case, it could have ended. My client had no counter-claims. They had counter-claims for invalidity and non-infringement in Texas. There was no case filed in New York. The appellants and their client could have walked away at that point and cut their losses, filed a covenant not to sue, and all of this would have ended. And yet they continued to litigate for a full year and a half until the case was ultimately transferred. The reason your client was seeking ownership of all those patents was some sort of public altruism, right? That's correct. Well, if that's the case, why should opposing counsel pay for that? I mean, it is altruism after all. Our argument, and the district court agreed, is that they looked at the course of conduct throughout the litigation. They looked at the filing of the complaint. But more specifically, they identified 11 specific acts that took place throughout the course of the litigation, which triggered sanctions under 1927. No, you can go ahead. What really concerns me here is that this clearly is a case for 285 fees. There's no doubt that the district court was right. Those would be sustained. And that the problem is that the plaintiff in this case is now judgment-proof, and you can't get those. So the district court has used 1927 as a way to get those fees paid because she refused to pierce the veil against the principal and the like. But that sets, I think, a very bad precedent because 1927 really, because it's a sanction on the attorneys for their own conduct, requires something more. And I'm just not sure, given this state of the record and five months after Alice, that it was completely non-colorable for them to file this complaint. I mean, frankly, for five years or a decade before, these kind of complaints were getting filed and were getting settled out all the time. But then Alice made this so clear that this kind of complaint would be considered not only non-meritorious, but so frivolous that to pursue it would endanger the attorneys, not just the company, the attorneys to 1927 fees. I understand your point. The district court treated the 1927 analysis separate from the 285 analysis. And I would argue that 1927 was not granted because the plaintiff was judgment-proof, but rather because the attorney's behavior was so bad. And one of the things we pointed out earlier was the declaration of Richard Juarez, where he says he needed to drop the cases to preserve his job. Well, if that were true... What's the basis for that? If even assuming it were true, why did the case continue for another year against my client? It appears from that, and the district court determined that the client's and the attorney's interests were somehow opposed. The client wanted to drop the cases against the defendants because it was being threatened by his employer. He did drop it against nine of them for nuisance value fees, but he maintained the case against my client that he could have dropped. If that's true... But he was concerned he wanted to drop the case. They proposed walking away, but they couldn't do it without getting into a bit of a hassle about attorney's fees and about the assignment of the patents. He could have filed a covenant not to sue. It would have been that simple. It was a single piece of paper they filed in New York a year and a half later. It would have ended the whole thing. But the district court determined that apparently the interest of the plaintiff, the patent owner, and its law firm were misaligned somehow, and that's why the case continued. Well, if they had filed a covenant not to sue, the attorney fee question would still be in play. I think what they were proposing is just to walk away, and you kept arguing, well, they could have walked away at any time. They should have walked away. They unduly multiplied proceedings under 1927, and I'm trying to point out to you that you're ignoring the fact that the attorney fee dispute was still in play and would have been in play even with a covenant. But the attorney fees would not have grown for another year and a half. And I assume wouldn't have been attributable directly to the attorneys under 1927. That's right, and so the case continued, and the court identified additional bad acts on behalf of the appellant throughout the case. There were 11 of them specifically. One thing I'd like to also mention is pre-judgment interest. Excuse me? Yes, go ahead. Pre-judgment interest. Appellant argues here for the first time that pre-judgment interest is not available under 1927. Appellant did not raise this issue with the district court, and so for that reason it should be waived. In fact, in its motion for reconsideration, the appellants admitted that pre-judgment interest was permissible under 1927 and only argued about the date by which it should begin to accrue. And so because the appellant did not argue this in the district court, the court here should not consider this issue, and the appellant should have waived it. Assuming that we look at the law, if there's no guidance in 1927, and the Second Circuit doesn't seem to have any authority on it, can we look at Mathis v. Spears, our case where we held we can award fees pursuant to 285? Absolutely. I mean, it's certainly reasonable. Not that we believe they are. The policy is the same. What's your best authority to support the argument that we should allow state pre-judgment interest in a 1927 award? That there's nothing that precludes it from happening. That's my best argument. There's no case to the contrary, and you'll be the one making the law if you decide otherwise. You sound like Robert F. Kennedy. Why not? Anything further, counsel? Nothing further for me.  Thank you, counsel. Thank you. I would like briefly to make three points. First, what you just heard is an argument for a good faith extension of the law. That is precisely the type of arguments that lawyers have to be authorized to make. DDR had come down the month before the complaint in this case was filed. DDR expressed the uncertainty in the state of 101 jurisprudence at the time, the difficulty in determining what was an abstract idea. That was the backdrop against which this complaint was filed. You heard that Gus should have walked away from the case. Not only was that complicated by the demand to the client for handing over the patents, but Gus then turned around while the motion to transfer was pending, before the briefing was complete, and filed the duplicative action in New York. There was no reason to do that other than concern that they were going to lose the transfer motion in Texas and a desire to complicate the settlement process when AlphaCap had said what it wanted to do was walk away and offered, immediately after the filing of that New York action, to a walkaway settlement, which Gus... You pointed to DDR, and you're right. DDR came down very shortly after Alice. But within six to 12 months after DDR, there were slews of decisions affirming the rejection of claims like this. So maybe, I think you're probably completely right that filing the complaint itself is not frivolous. But after this court repeatedly rejected claims just like this, didn't it at some point become frivolous to continue to pursue this case? No, Your Honor. And I would point to Berkheimer as an example as to why. When you're practicing at the district court level, you have to look not only at what the law is today, but what you predict it may be two years from now. Berkheimer's not going to help you with this case. I think you can move on from that argument. You can't move on too far. Your time's up. I'm sorry. Thank you. Matter will stand submitted. Thank you.